7808

### BROWN v. GALLIVAN BUILDING CO.

1. EVIDENCE—OPINION.—Admission of statement of opinion not having been made to appear in this case to have been prejudicial to appellant, not reversed.

2. MASTER AND SERVANT—APPLIANCES.—Where there is testimony tending to show the servant was inexperienced in the work; that he notified the superintendent of that fact, but he failed to instruct him; that appliances were not safe and master was so notified but failed to remedy the defect or to furnish a sufficient number of hands to do the work, nonsuit was properly refused.

3. EXCEPTION not pointing out any specific error will not be considered.

Before WATTS, J., Greenville, July, 1910.   Affirmed.

Action by Lewis A. Brown against J. F. Gallivan Building Co. Defendant appeals on following exceptions:

1. "Error in allowing the plaintiff to answer the following question: 'If you had known that those planks were not

spiked would you have ever done that?' This was an opinion and a conclusion.

2. "Error in allowing the plaintiff to answer the following question: 'If you had been told it was not spiked would you have undertaken to move it?' This was an opinion and a conclusion.

3. "Error in refusing to strike out the following answer of the plaintiff: 'If I had knowed it wasn't fastened I would have give up the job.' This was an opinion and a conclusion.

4. "Error in refusing to grant the motion for nonsuit upon the first ground, which was as follows: 'There is no testimony showing any negligence on the part of the defendant.'

5. "Error in refusing to grant the motion for nonsuit upon the second ground, which was as follows: 'The testimony clearly shows that the plaintiff is a man of ordinary intelligence and understanding who went to work for the defendant as a carpenter; that he took work in the room where these operations testified to were going on for three and a half days, in which time the scaffold had been moved eight or ten times a day; that the scaffold had upon it four heavy planks which projected three feet on each side of the horses and were one foot from the end; that the plaintiff could see the condition of the planks, and could see their size and length and judge their width; that when he went back to slide the horses for the purpose of moving it, which movement the plaintiff made with the aid of his fellow servant at the other end of the horses; that he was fully conscious of the risk he ran and his injury was due to the risk he voluntarily assumed.'

6. "Error in refusing the motion for nonsuit upon the third ground, which was as follows: 'The testimony clearly shows that the plaintiff is a man of ordinary intelligence and understanding who went to work for the defendant as a carpenter; that he took work in the room where these operations testified to were going on for three and a half days, at

which time the scaffold had been moved eight or ten times a day; that the scaffold had upon it four heavy planks which projected three feet on each side of the horses and were one foot from the end; the plaintiff could see the condition of the planks, and could see their size and length and judge their width; and that when he went back to slide the horses for the purpose of moving it, which movement the plaintiff made with the aid of his fellow servant at the other end of the horses and his injury was due to contributory negligence.'

7. "Error in refusing the motion for nonsuit upon the fourth ground, which was as follows: 'That there is no testimony showing that the defendant was guilty of any negligence, but on the contrary the plaintiff's own statement was that the injury was due to the negligence of the fellow servant, to wit: the man at the other end of the horses whom he says jerked the horses, and suddenly raised and thereby tilted the plank causing it to fall.

8. "Error in refusing the motion for a new trial upon the minutes of the Court, when there was no evidence to sustain the verdict or any evidence of negligence on the part of the defendant. On the contrary it appeared clearly that the plaintiff was dealing with an instrumentality, to wit: planks and horses, of such simple construction and in such general use, that his knowledge of the same would be presumed by any person of ordinary care, and it was not incumbent upon the defendant either to nail the planks to the horses or to advise the plaintiff that they were not so nailed. On the contrary the evidence showed that it was necessary to move the horses frequently and that nailing the planks to them would have not only made it more dangerous to move them, but made it more dangerous for the workmen while they were in use.

"The Court should have taken judicial notice of the method of use of such a simple instrumentality, and of the fact that to nail the planks to the horses would, as a mechani-

cal result have made the horses rock upon their legs when the weight of the workmen caused the planks to bend beneath them.

"The testimony showed that the planks weighed about one hundred and seventy-five pounds each, and there was ample margin, both in the width of the horses and in the length of the planks to keep them from slipping off, and the sole cause of the accident was the negligence of the plaintiff's fellow servant, who raised up the end of one of the horses thereby sliding the planks off and causing the same to fall on plaintiff.

9. "Error in charging the jury as follows: 'Now I charge you as a matter of law, if the plaintiff here was injured through the carelessness and negligence of the defendant company, its agents or servants, and that carelessness and negligence on their part was the direct and proximate cause of his injury, and he did not in any manner by his own carelessness and negligence contribute towards the direct and proximate cause of his injuries the plaintiff would be entitled to recover such actual damages as you think he has sustained proportioned to the injuries sustained.'

10. "Error in charging the jury as follows: 'If the fellow servant was negligent and the master was also negligent, and that negligence was joint and concurrent, and the plaintiff did not in any manner by himself by his own carelessness and negligence contribute towards the direct and proximate cause of his injuries, under circumstances of that sort the plaintiff would be entitled to recover such actual damages sustained apportioned to the injuries sustained.'

11. "Error in charging the jury as follows: 'But, he had the right to assume that a reasonbly safe and suitable place was furnished him to do the work, and reasonably safe and suitable appliances to do the work with, and if he did not know of the danger, if it was not obvious and apparent, and the company was careless and negligent and that carelessness or negligence on their part through the bosses,

or agents or servants was the direct and proximate cause of his injuries he would be entitled to recover such actual damages as he has sustained apportioned to the injuries sustained.' "

*Mr. Wm. G. Sirrine,* for appellant.

*Messrs. Martin & Earle* and *McCullough & Blythe,* contra. *Messrs. Martin & Earle* cite: *There was evidence of negligence:* 87 S. C. 136; 82 S. C. 224, 533. *Care and prudence of servant is for jury:* 85 S. C. 363; 80 S. C. 239; 86 S. C. 131. *Risks assumed by servant:* 80 S. C. 352; 79 S. C. 502; 82 S. C. 302; 48 L. R. A. 758; 47 L. R. A. 164; Lab. on M. & S. 1025, and notes. *Master is liable where his negligence concurs with that of fellow servant:* 52 S. C. 546; 68 S. C. 56; 94 A. S. R. 263; Lab. on M. & S. 2248, 2251-2.

March 9, 1911. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action for damages, alleged to have been sustained by the plaintiff, through the negligence of the defendant.

The allegations of the complaint, material to the questions under consideration, are as follows:

"That on or about September 20th, 1907, plaintiff was a servant of defendant company, and employed by said company to assist in work, which said company, at that time, had in charge and was doing, in retimbering a certain brick building in the town of Gaffney, State aforesaid.

"That in said work, defendant company negligently used certain heavy timber supports or 'horses,' together with certain heavy timbers, running from one support to the other, and negligently failed to have properly fastened, or to have in any manner fastened, the said timbers to the said supports; that plaintiff was a green and inexperienced hand,

in the work of transferring these scaffolds or timbers and supports from place to place, and defendant company negligently put him at said work, without giving him proper instructions, or any instructions, in regard to the dangers connected therewith, and negligently failed to furnish him a safe place to work, or to furnish safe appliances, or a sufficient number of men to do said work, and (through its foreman or 'boss'), negligently gave hurry orders to plaintiff and another man, to move said timbers and supports, and negligently rushed them unduly, in the performance of said work,—and the negligence of the defendant company, in all these particulars, was the proximate cause of the said heavy timbers, being pulled from the said scaffold or 'horses,' and falling upon the plaintiff."

The defendant denied the allegations of negligence, and set up the defenses of contributory negligence, and assumption of risk.

At the close of the plaintiff's testimony, the defendant's attorneys, made a motion for a nonsuit, which was refused.

The jury rendered a verdict, in favor of the plaintiff for $850.00, and the defendant appealed upon exceptions, which will be reported.

*First, Second and Third Exceptions.* Even regarding the the answers as statements of opinion, their admission was not made to appear, to be prejudicial to the rights of the appellant.

*Fourth Exception.* The plaintiff testified as follows: "Who employed you for the Gallivan Building Company? The first man was Mr. Jack Weber. Who employed you at Calhoun Falls? Mr. Langley. Superintendent Langley? Yes, sir. Was the same man in charge of work at Gaffney? Yes, sir. Did Superintendent Langley know, whether you had had experience, at that kind of work or not—did you or not tell him, whether you came off of the farm? Yes, sir; I told him I come off of the farm, and didn't know much about that sort of work. * * * How many men would it have

taken to move that thing weighing as much as it did? There should have been eight men, to my judgment. One to each leg? Yes, sir. Were eight men sufficient to have moved it smoothly? Yes, sir; I think so. Do you know whether or not these planks, that constitute the body of the scaffolding, were spiked on there? No, sir. Had anybody given you any instructions as to the danger of that work? No, sir; nobody at all. Had you ever done work of that kind? No, sir; that was the first time."

J. M. Skelton testified as follows in behalf of the plaintiff: "Were the planks spiked? No, sir. Have you done any work of this kind, building work at other places? Yes, sir. Where abouts? I done some at Greg Shoals, and some at Iva Cotton Mill. State whether or not at these places— whether or not it was customary, to have such planks spiked? Yes, sir; it was customary to have them spiked. We spiked them at Greg Shoals and at Iva. * * * According- ing to your best judgment what was the weight of that scaffolding? It would have weighed every bit of a thousand pounds. How many men would it take, to handle it safely and properly? Eight men could have done it. Could two men do it? No, sir. Could three men do it? No, sir; it was too much for three men. Did you have anything to do with the construction of these scaffolds, under Mr. Parker's direction? Yes, sir; me and Mr. McCarter. Mr. Parker was standing there, and I says, gentlemen, lets nail these planks, or they will fall and kill somebody. They said no, we had to move them around and about the wall. At the other places you worked, were they nailed? Yes, sir; they were nailed at Greg Shoals and other places. Could you move them? Yes, sir; they just had one nail in the middle of the plank."

This testimony tends to show, that the plaintiff was inexperienced in such work; that he notified the superintend- ent of such fact, but that he failed to give him proper instruction; that the appliances were not safe, and the

defendant was notified of such fact, when the scaffolds were being constructed—one of the workmen who assisted in constructing the scaffolds having said to the defendant's representative, that unless the planks were nailed, they would fall and kill somebody; and that the defendant failed to furnish a sufficient number of hands, to do the work.

It is only necessary to refer to the foregoing testimony, to show that the fifth, sixth, seventh and eighth exceptions, cannot be sustained.

*Ninth, Tenth and Eleventh Exceptions.* These exceptions cannot be sustained for the reason that they fail to point out any specific error.

Judgment affirmed.